IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONNIE GUTIERREZ,         Case No. 3:12-cv-02016-MA

       Plaintiff,        OPINION AND ORDER

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

BRUCE BREWER
P.O. Box 421
West Linn, OR 97068

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

L. JAMALA EDWARDS
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Connie Gutierrez seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for a period of disability benefits and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court affirms the decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 17, 2009. Plaintiff protectively filed an application for supplemental security income on January 11, 2010. In her applications, plaintiff alleges disability beginning September 12, 2009, due to chronic pain in her hips, knees, ankles, feet and low back. Plaintiff's claims were denied initially and on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on May 5, 2011, at which plaintiff appeared with her attorney and testified. A vocational expert, Amberly M. Ruck, also appeared and testified. On May 19, 2011, the ALJ issued an unfavorable decision. The Appeals Council

denied her request for review, therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was 52 years old on the date of the hearing and has past relevant work as a caregiver, a dietary aide/food service worker, and a housekeeper.

## THE ALJ'S DISABILITY ANALYSIS

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged onset date. At step two, the ALJ found the following severe impairments: degenerative joint disease of both hips and knees, and obesity. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal a Listing. The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work except that she can lift 20 pounds occasionally and ten pounds frequently, she can stand and walk for four hours total in an eight hour work day, she has no limitations with sitting, and can only occasionally crawl, climb or kneel.

At step four, the ALJ found that plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff contends that the following errors were committed:

3 - OPINION AND ORDER

(1) the ALJ failed to properly evaluate her credibility; (2) the ALJ failed to properly evaluate the testimony of Patricia Buckley, P.A.-C/N.D., her treating physician assistant; (3) the ALJ failed to properly credit the lay testimony of Thomas Valdez, plaintiff's ex-husband; and (4) the ALJ erroneously relied on the vocational testimony of Ms. Ruck because it diverged from the Dictionary of Occupational Titles.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Commissioner Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not

4 - OPINION AND ORDER

substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. The ALJ Did Err in Evaluating Plaintiff's Credibility

#### A. Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility

5 - OPINION AND ORDER

determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

**B.   Analysis**

At the hearing, plaintiff testified that she has had ongoing knee problems which caused her stop working in December of 2009. Plaintiff stated that her right leg went numb while working her shift as a school janitor. Plaintiff stated that she tried to work as a hotel front desk clerk, but that job caused her hips to hurt from sitting too long, and that while standing, her knee would "lock up" and swell.

Plaintiff testified that while working as a hotel housekeeper in 2007, she was hit on the head with a metal object. Plaintiff testified that a friend told her that she may have had a mini-stroke and to seek treatment. Plaintiff stated that since being hit on the head, she has difficulty finding words, gets overwhelmed easily and can have panic attacks when in a crowd.

Plaintiff testified that she has gained 43 pounds since she has stopped working 2009, and currently weighs 276 pounds and is five feet four inches tall. Plaintiff stated that her knees swell with exercise, and that she must recline to alleviate the pain and swelling. Plaintiff testified that she can drive, but prefers not

6 - OPINION AND ORDER

to because her knees lock up. Plaintiff is able to grocery shop, but must lean on the cart for support in case her knee gives out. Plaintiff stated that she sleeps in a recliner because it is more comfortable. Plaintiff stated that she elevates her legs for a couple of hours each day, periodically throughout the day.

In a January 30, 2010 Function Report, plaintiff described that she is able to perform all self care, and that she is more forgetful since her head injury. Plaintiff described that she cooks meals, taking 45 to 90 minutes. Plaintiff stated that she does not do yard work, but does clean the house or do laundry for 45 minutes at a time before needing to rest. Plaintiff described that she can easily loose her balance, has low energy, and tires easily. Plaintiff stated that she can walk one city block before needing to rest, has no difficulty paying attention, can follow written instructions "exactly," has some difficulty with spoken instructions, and has no difficulty getting along with others.

In a Pain and Fatigue Questionnaire, plaintiff described having pain that reaches from her lower back to her toes, and that sitting or walking for an hour or more causes pain. Plaintiff stated that any continuous sitting, walking, or standing exacerbates her pain. Plaintiff stated that she takes three or four naps each day, lasting from 20 minutes to two hours in length. Plaintiff also described that she can only be active for four hours before needing to rest.

7 - OPINION AND ORDER

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine her subjective complaints.

### 1. activities of daily living

The ALJ found that plaintiff's wide range of activities of daily living are inconsistent with the level of disability she alleges. For example, the ALJ discussed that plaintiff is capable of performing all household chores (with breaks), she drives a car with manual transmission, works in the yard, raises chickens, helps her children with school work, and cooks full meals. The ALJ also noted that plaintiff regularly talks with friends, and plays cards and board games with friends and family members. The ALJ's findings are wholly supported by substantial evidence in the record.

I reject plaintiff's argument that the ALJ erred by failing to find that plaintiff engaged in the activities of daily living for a "substantial part" of each day. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). My careful review of the record reveals that the ALJ's findings readily meet this standard. In

this case, plaintiff indicated that on a typical day, she rises at 5 a.m., has breakfast, gets her children off to school, then returns home to clean and do laundry for 45 minutes before needing to rest. After school, plaintiff reported she assists her children with homework and drives them to their activities. Additionally, as the ALJ correctly noted, plaintiff reported that she is able to prepare meals for 45 to 90 minutes. Moreover, plaintiff reported to her physician assistant that the pain in her legs is at its worst after she is in the car for a "few hours" or working in the yard caring for her 20 chickens. Tr. 335.

Based on this significant evidence in the record, I conclude that the ALJ could discredit plaintiff because her level of activity is inconsistent with the degree of impairment that she alleges. See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment"). Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements.

////

////

9 - OPINION AND ORDER

### 2. lack of objective medical evidence

The ALJ found plaintiff's objective medical record was inconsistent with her allegations of debilitating symptoms. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); Morgan v. Commissioner Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). The ALJ's findings are supported by substantial evidence in the record. To be sure, the record contains very few medical records prior to plaintiff filing her social security applications in 2010. As the ALJ noted, plaintiff's emergency room records relating to her on-the-job injury in 2007 revealed normal neurological test results.

Additionally, the ALJ discussed that plaintiff was examined by Zachary Steinberg, M.D., on February 11, 2010. Dr. Steinberg's notes indicate that plaintiff reported she has suffered knee and hip pain since 2005 that limited her ability to walk, yet she admitted not receiving any treatment. The ALJ noted that Dr. Steinberg observed normal gait and strength in plaintiff's legs, and that Dr. Steinberg found no objective explanation for the plaintiff's reported loss of sensation in her right ankle. Dr. Steinberg diagnosed plaintiff with bursitis, and opined that plaintiff had no functional limitations due to her back and knee pain. Tr. 309-313.

The ALJ also discussed that plaintiff established care with Ms. Buckley, her treating physician assistant in April of 2010. Ms. Buckely's treatment notes indicate that plaintiff reported she was not taking any medication for her knee pain and hip pain at that time. Tr. 326-27. In an April 27, 2010 follow-up treatment note, Ms. Buckley indicated that plaintiff acknowledged difficulty with weight control, and understood that her weight gain was contributing to her knee pain. Ms. Buckley advised plaintiff to take ibuprofen for pain. Tr. 329. In June and July of 2010, Ms. Buckley discussed cortisone injections for plaintiff's knee and hip pain, as well as diet modification, increased exercise and physical therapy. The ALJ discussed that Ms. Buckley's January 7, 2011 treatment note shows that plaintiff reported decreased hip pain with physical therapy. Tr. 337. The ALJ accurately stated that Ms. Buckley recommended treating plaintiff's knee pain and swelling with ibuprofen, naproxen, and ice. Tr. 329, 335, 340. The ALJ discussed imaging showing that plaintiff has some degeneration in her knees.

Additionally, the ALJ accurately discussed a March 28, 2011 examination conducted by Robert Earl P.A., at the Legacy Bone Clinic. Mr. Earl's evaluation revealed normal gait and that she ambulated well. As the ALJ indicated, Mr. Earl recommended plaintiff continue conservative treatment, including physical therapy, alternating heat and ice, weight loss, and over-the-

11 - OPINION AND ORDER

counter anti-inflammatories (NSAIDs, such as ibuprophen and naproxen). Tr. 367-69.

In short, the ALJ reasonably concluded that the minimal objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

### 3. conservative treatment

The ALJ also discounted plaintiff's allegations of all-disabling pain in light of the minimal, conservative treatment evidenced in the record. A conservative course of treatment is a permissible negative inference sufficient to discount a claimant's testimony regarding the severity of an impairment. Tommasetti, 533 F.3d at 1039; Parra, 481 F.3d at 750-51. Indeed, the record reflects that plaintiff responded well to physical therapy concerning her hip pain. Tr. 337. As the ALJ discussed, plaintiff reported extreme chest pain that completly resolved with a rib manipulation and Maalox. As discussed above, plaintiff's treatment providers consistently recommended only conservative treatment such as physical therapy, weight loss, ibuprofen, and naproxen, and ice for her knee pain. Additionally, the record reveals that Ms. Buckley provided plaintiff a one-week dose of hydrocodone for increased knee pain with exercise. Despite her allegations of disabling pain, there is no evidence in the record that plaintiff presently takes anything other than over-the-counter medication for

pain. The ALJ's findings are supported by substantial evidence, and thus, the ALJ reasonably discounted plaintiff's credibility on this basis. Tommasetti, 533 F.3d at 1040.

In summary, the ALJ made specific findings justifying the decision to disbelieve plaintiff's allegations of the intensity, persistence and limiting effects of her pain. Taken as a whole, the ALJ's reasons for rejecting plaintiff's pain testimony are clear and convincing and are supported by substantial evidence in the record.

## II. The ALJ Did Not Err in Evaluating the Opinion of Ms. Buckley

Plaintiff complains that the ALJ improperly rejected the opinion of her physician assistant, Ms. Buckley. In a May 13, 2011 letter, Ms. Buckley opined that plaintiff has:

> moderate to moderately severe medial patellofemoral joint space narrowing in the left knee and some fragmentation of the tibial tuberosity of the right knee. She has been referred to orthopedics for these problems. .... She is certainly unable to be on her feet for four hours a day five days a week.

Tr. 371. Ms. Buckley also noted that plaintiff's knee pain prevents her from exercising, her obesity contributes to her condition, and that plaintiff's condition was unlikely to improve. Id.

Plaintiff contends that the ALJ provided inadequate reasons to discount Ms. Buckley's opinion, and that when the opinion is properly credited, plaintiff is disabled under the Medical-

13 - OPINION AND ORDER

Vocational Guidelines (the "Grids"). Plaintiff's arguments fail for multiple reasons.

First, under the social security regulations governing the weight to be accorded to medical opinions, "acceptable medical sources" include licensed physicians and licensed psychologists, but not physician assistants. See 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). Physician assistants are deemed to be "other sources." Id. "Other" medical sources may not establish the existence of a medically determinable impairment, but, the information from other sources may provide insight into the severity of a claimant's impairments and ability to work, especially where the evidence is complete and detailed. See SSR 06-03p, available at 2006 WL 2329939, *4-5. The record does not show that Ms. Buckley worked under a physician's close supervision. See Molina, 674 F.3d at 1111 (noting that a physician assistant who works under supervision of a physician may be deemed an acceptable medical source).

Thus, the ALJ accurately found that Ms. Buckley was an "other source" under the regulations, and as such, the ALJ was required only to provide a germane reason for discounting her opinion. See, e.g., Bruce v. Astrue, 557 F.3d 1113, 1115-16 (9th Cir. 2009)(explaining standard for lay witness testimony); Turner v. Commissioner Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010)(same).

Second, contrary to plaintiff's suggestion, the ALJ did not discount Ms. Buckley's opinion solely because she is not an acceptable medical source, nor did the ALJ fail to give her opinion of plaintiff's impairments consideration. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(an ALJ must explain why "significant probative" evidence has been rejected). To be sure, the ALJ's decision throughly discussed all of Ms. Buckley's treatment notes and her opinion letter, and gave it less weight because her opinion was inconsistent with other objective medical evidence, which showed minimal limitations. Inconsistency with other objective medical evidence is an adequate reason to discount a physician's opinion. See Molina, 674 F.3d at 1112 (giving less weight to physician assistant opinion where it conflicted with opinion of a physician). Here, the ALJ gave plaintiff the benefit of the doubt concerning her alleged pain and incorporated Ms. Buckley's opinion that plaintiff could not stand and walk for more than four hours into the RFC, but otherwise rejected Ms. Buckley's described limitations.

Third, as discussed more thoroughly above, the ALJ could reasonably conclude that Ms. Buckley's opinion concerning greater limitations was inconsistent with other objective medical evidence in the record. For example, the ALJ discussed that Dr. Steinberg opined that plaintiff had no functional limitations resulting from her knee and hip pain. And, as the ALJ discussed, Mr. Earl found

15 - OPINION AND ORDER

that plaintiff had a normal gait, ambulated well, and that plaintiff's neuromuscular evaluation was essential normal. Moreover, Mr. Earl advised that plaintiff exercise, lose weight, take ibuprofen and naproxen, and ice her knees. Based on the lack of objective medical evidence in the record, the ALJ reasonably discounted Ms. Buckley's opinion. Molina, 674 F.3d at 1112. I find no error in the ALJ's evaluation of the medical evidence.

Lastly, plaintiff's contention that when Ms. Buckley's opinion is credited, plaintiff is disabled under the Grids misses the mark. Plaintiff's lifting restriction falls in the "light" work category. See 20 C.F.R. § 404.1567(b)(defining "light" as work that "involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds"). Plaintiff does not challenge the ALJ's findings concerning her lifting ability. Generally speaking, to be considered capable of the full range of light work, a claimant must be capable of a good deal of walking, usually up to six hours a day. 20 C.F.R. § 404.1567(b). In this case, however, the ALJ determined that plaintiff could perform "light work as defined in 20 C.F.R. § 404.1567(b) *except* ... stand and walk four hours total in an eight hour day." Tr. 19 (emphasis added). Thus, the ALJ concluded that plaintiff was capable of a modified range of light work, not sedentary work.

Therefore, because plaintiff's exertional limitations did not fall completely within a particular Grid rule, the ALJ used the

16 - OPINION AND ORDER

Grids as a framework, and appropriately consulted a vocational expert. Thomas, 278 F.3d at 960. In short, I conclude that the ALJ did not err in evaluating Ms. Buckley's opinion and properly applied the Grids as a framework and took testimony from the vocational expert.

### III. The ALJ Did Not Err in Evaluating the Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Bruce, 557 F.3d at 1115; Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. Valentine, 574 F.3d at 694.

Plaintiff's ex-husband, Thomas Valdez, provided a third party function report, describing plaintiff's daily activities and limitations. Tr. 197-204. Mr. Valdez described that plaintiff gets the kids ready for school, performs household chores with breaks, and then naps for the remainder of the day. Mr. Valdez stated that plaintiff can prepare meals, but becomes tired, and that pain interrupts plaintiff's sleep. Mr. Valdez stated that plaintiff socializes with friends, plays cards, watches television, can follow instructions, and tires easily when climbing stairs or walking long distances.

17 - OPINION AND ORDER

The ALJ thoroughly discussed Mr. Valdez's function report and found that his statements were credible to the extent that they described his observations, but discounted his testimony because it was undermined by the lack of objective medical evidence. As discussed above, the ALJ analyzed the medical evidence and concluded that it did not support greater limitations. Inconsistency with the medical testimony is a germane reason to discount Mr. Valdez's lay testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). Additionally, I conclude that Mr. Valdez's testimony largely echoes plaintiff's testimony that the ALJ appropriately discounted. Thus, even if the ALJ erred in evaluating the lay testimony, any such error was harmless because it was inconsequential to the ultimate nondisability determination. See Molina, 674 F.3d at 1117-18 (ALJ's well-supported reasons for rejecting claimant's testimony apply equally to lay witness testimony describing the same limitations); Valentine, 574 F.3d at 694 (same).

IV. **The ALJ Did Not Err at Step Five**

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy. Andrews, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets out all of the claimant's limitations that are

18 - OPINION AND ORDER

supported by substantial evidence. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

Plaintiff complains that the ALJ erred in relying upon information from the vocational expert that diverged from the *Dictionary of Occupational Titles*. According to plaintiff, light work requires plaintiff to be on her feet for six hours a day, yet the ALJ's RFC limits plaintiff to four hours. Plaintiff contends that the ALJ failed obtain to an explanation for the divergence from the vocational expert under SSR 00-04p, which requires an ALJ ask a vocational expert whether her testimony conflicts with the *Dictionary of Occupational Titles*. Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007). I disagree.

Here, in the ALJ's hypothetical to the vocational expert, the ALJ inquired whether jobs existed in the national economy with an RFC including the plaintiff's restrictions, and that the person should not stand or walk for four hours. Tr. 51. The vocational expert responded that the position of office helper did not require standing or walking for more than four hours, and that the office helper position also permitted an individual to change positions from sitting to standing at least hourly. Additionally, in response to the ALJ's questioning, the vocational expert stated that her testimony was consistent with the *Dictionary of Occupational Titles*. Tr. 52. Thus, the ALJ performed the

appropriate inquiry under SSR 00-04p, and plaintiff's contention otherwise is rejected.

Having found no error in the ALJ's credibility determination or evaluation of the medical evidence, I conclude that the RFC was based upon all of plaintiff's limitations the ALJ found credible and supported by substantial evidence, and therefore, the ALJ could rely upon the vocational expert's testimony. The ALJ did not err at Step Five.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this **24** day of MARCH, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge